*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL JOHN-ROBERT BERTRAND,

        Defendant-Appellant.

UNPUBLISHED
April 14, 2026
10:43 AM

No. 368486
Menominee Circuit Court
LC No. 2023-004529-FC

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) second-degree home invasion, MCL 750.110a(3); (2) false report of a felony, MCL 750.411a(1)(b); and (3) malicious destruction of a building, MCL 750.380(3)(a).[1] The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve (1) 8 to 40 years, (2) 3 to 15 years, and (3) 3 to 40 years in prison, respectively.[2] We affirm.

## I. FACTS

This case arises out of defendant and his ex-girlfriend breaking into and staying at a house for "three days on and off[.]" Defendant's ex-girlfriend testified that during that time: (1) defendant attempted to hide his vehicle behind a barn on the property, which resulted in the vehicle getting stuck; (2) defendant took several items from the home; (3) defendant shot a crossbow into one of the home's walls; and (4) she and defendant smoked and left cigarette butts in the home. Police officers were eventually alerted to suspicious activity at the home, and upon arrival, the

---

[1] The jury determined that defendant was not guilty of two counts of breaking and entering with intent, MCL 750.110.

[2] Defendant's sentences were to run concurrently to each other but consecutively to "Michigan Parole (#2017-3923-FH) . . . ."

officers found defendant's parked vehicle and a jail receipt with defendant's name on it. Defendant told officers that his vehicle had been stolen from a local park.

Defendant was arrested in this case on June 1, 2022, while he was on parole for an unrelated conviction. The same day that defendant was arrested, the Michigan Department of Corrections (MDOC) issued a parole detainer directing law enforcement to keep defendant in their custody "until further notice . . . ." Defendant's trial was originally scheduled for January 17, 2023; however, because the prosecutor delayed obtaining additional DNA samples, the prosecution was unable to submit the corresponding laboratory report before the discovery deadline. Shortly before the original trial date, the prosecutor dismissed the charges against defendant so that he could refile the charges and use the aforementioned laboratory report during the trial. The trial court sanctioned the prosecutor's office because it determined that "[t]he prosecution did not offer a reasonable explanation as to why they significantly delayed obtaining a search warrant and submitting the additional sample to the laboratory."

During defendant's trial on the refiled charges, the prosecution used the aforementioned laboratory report and accompanying scientific testimony that it initially sought to admit after the discovery deadline had passed in the previous filing; that evidence provided "very strong support" that defendant's DNA matched the DNA from a cigarette recovered at the house. Defendant was convicted and sentenced, as stated earlier. Defendant then moved the trial court to dismiss with prejudice or correct an invalid sentence—raising the same arguments that are now raised on appeal—which the trial court denied. Defendant now appeals.

## II. RIGHT TO A SPEEDY TRIAL

On appeal, defendant argues that the prosecutor violated his right to a speedy trial under the United States Constitution and the Michigan Constitution by dismissing and refiling the charges against him shortly before the original trial date. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by raising it in the trial court. See *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). Whether a defendant was denied his right to a speedy trial is an issue of constitutional law, which we review de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). Additionally, "[w]e generally review a trial court's factual findings for clear error." *Id*.

### B. ANALYSIS

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Id*., citing US Const, Am VI; Const 1963, art 1, § 20. Courts balance four factors (the *Barker*[3] factors) to determine whether a defendant was deprived of his right to a speedy trial under the United States Constitution: "(1) the length of delay, (2) the reason

---

[3] *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262.

As an initial matter, defendant argues that the right to a speedy trial under the Michigan Constitution, Const 1963, art 1, § 20, has always been separate from the federal right because Michigan has never officially adopted the *Barker* factors. But defendant ignores that our Supreme Court *has* explicitly adopted the *Barker* standards. See *id*. at 261 ("This Court adopted the *Barker* standards for a speedy trial in [*People v Grimmett*, 388 Mich 590, 606; 202 NW2d 278 (1972)]."). Because we must apply the same test, we will address defendant's claims under the Michigan Constitution and the United States Constitution in the same analysis.

The first *Barker* factor considers the length of delay between the defendant's arrest and trial. See *Williams*, 475 Mich at 261-262. Here, defendant was arrested on June 1, 2022, and his trial began on August 15, 2023. Therefore, defendant's case was delayed for 440 days, or approximately 14 and a half months. Because the length of delay was less than 18 months, defendant must prove that he was prejudiced by the delay to establish a violation of his right to a speedy trial. *People v Cain*, 238 Mich App at 112.

The second factor is the reason for delay. *Barker*, 407 US at 530-531. In this case, the trial court concluded that the prosecution was responsible for the delay from the initial trial date on January 17, 2023 to the first pretrial in the new case on March 31, 2023. During this time, the prosecutor dismissed and refiled the charges because he wanted to present the laboratory report at trial but had failed to submit the additional sample needed to finish the report in time.[4] These actions were arguably the kind of "deliberate attempt to delay the trial . . . [that] should be weighted heavily against the government." *Id*. at 531.

Furthermore, the trial court determined that both parties were responsible for the delay from March 31, 2023 to May 1, 2023 because both attorneys requested a continuance for the pretrial hearing. That portion of the delay, which was attributable to both parties, is considered neutral. See *People v Waclawski*, 286 Mich App 634, 667; 780 NW2d 321 (2009). Although the record is slightly unclear, it appears that the trial court attributed the next delay—from the May 1, 2023 pretrial hearing to the start of the trial on August 15, 2023–to the typical delays in court scheduling. Consequently, that portion of the delay only minimally weighs in defendant's favor. See *Williams*, 475 Mich at 263 ("Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.") (quotation marks and citation omitted). Nonetheless, given that the prosecutor's delay in dismissing and refiling the charges "should be weighted heavily against the government," we conclude that this factor weighs heavily in defendant's favor. *Barker*, 407 US at 531.

---

[4] The laboratory had informed the prosecutor of the additional samples that it needed on October 20, 2022; however, the prosecutor did not obtain a search warrant for the additional samples until December 2, 2022. Therefore, the prosecutor's delay likely began in October 2022, rather than January 2023.

The third *Barker* factor is whether the defendant asserted his right to a speedy trial. See *Id*. at 528. On appeal, the prosecution concedes that defendant properly asserted this right. Therefore, this factor weights in defendant's favor. *Id*. at 528-529.

Finally, the fourth factor considers whether the delay prejudiced defendant. *Id*. at 532. Our Supreme Court has recognized two kinds of prejudice that a criminal defendant may experience: "prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). Prejudice to the defendant's person "take[s] the form of oppressive pretrial incarceration leading to anxiety and concern." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). But prejudice to the defense is the more serious concern "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 US at 532.

On appeal, defendant argues that he suffered prejudice to his person because he received no credit for the 506 days spent in the county jail while on a parole detainer. This Court has recognized that "[p]retrial incarceration is always prejudicial in that the accused is denied many of his civil liberties." *People v Ovegian*, 106 Mich App 279, 284; 307 NW2d 472 (1981) (quotation marks and citation omitted). But in *Williams*, 476 Mich at 264, our Supreme Court determined that the prejudice factor weighed against the defendant, even though he received no credit for the 19 months that he was held on a parole detainer before sentencing because there was no evidence that his defense was prejudiced. Similarly, here, this factor weighs against defendant because he failed to identify any way that the delay prejudiced his *defense*. In fact, defendant appears to concede that his defense was *not* prejudiced by arguing that the laboratory report was not necessary to the prosecution's case because the prosecution already had "significant evidence" to convict defendant. Therefore, because defendant failed to establish that the 14-and-a-half-month delay prejudiced his defense, the prosecution did not violate defendant's right to a speedy trial under the United States Constitution or the Michigan Constitution. See *id*. at 264-265; *Cain*, 238 Mich App at 112.

## III.  JAIL CREDIT

Defendant further argues that the trial court erred by refusing to award credit for the time that he spent in jail awaiting sentencing. Defendant specifically argues that he was entitled to at least 280 days of credit and possibly up to 506 days of credit. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this argument by raising in it in his motion to dismiss or correct an invalid sentence. See *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). "Whether a defendant is entitled to credit for time served in jail before sentencing is a question of law that we review de novo." *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011).

### B.  280 DAYS

MCL 769.11b, which controls credit for time served in jail awaiting sentencing, states as follows:

Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

In other words, "the trial court must grant jail credit when a defendant is held in jail for the offense of which he or she is ultimately convicted if he or she is denied or unable to furnish bond for that offense," but "individuals who are detained in jail for some reason other than the denial of or inability to furnish bond are not entitled to jail credit." *People v Allen*, 507 Mich 597, 606; 968 NW2d 532 (2021). Our Supreme Court previously determined that one reason to deny jail credit occurs when

the individual was a parolee who was arrested on a new charge that might also constitute a violation of his or her parole. In these circumstances, parole officials may issue a warrant for the return of a parolee to a state penal institution under MCL 791.238 or require that the parolee be arrested without a warrant or detained in any jail of the state or both under MCL 791.239. If the parole officials properly invoke one of these statutes, the individual is not being held because of a bond determination on the new charge but because the parole officials want him or her held to face the possible parole violation charges. Put differently, once the individual is held for the parole violation, his or her continued detention has nothing to do with a denial of or inability to furnish bond in the new criminal proceeding. And once the individual is not being held because he or she was denied or unable to furnish bond in that proceeding, he or she is no longer entitled to jail credit under MCL 769.11b toward any sentence imposed in the new proceeding. [*Id.*]

In this case, on the same day that defendant was arrested on the initial charges, the MDOC issued a parole detainer under MCL 791.239 directing authorities to detain defendant "until further notice . . . ." MCL 791.239 allows parole officials to "seek detention of a parolee who has already been arrested on new charges . . . ." *Id.* at 607.

On appeal, defendant acknowledges that the MDOC issued the parole detainer the same day that he was arrested on the initial charges, but he argues that he was entitled to 280 days of credit for the time he spent in jail awaiting sentencing after the prosecutor refiled the charges against him because the MDOC did not issue another detainer after the charges were refiled. Defendant concedes that there is no authority requiring the MDOC to submit another parole detainer regarding the refiled charges. Defendant remained in custody from his initial arrest on June 1, 2022, until his sentencing hearing on October 20, 2023. Given that the trial court noted that the detainer was "not tied to a specific case" and that it was not lifted while defendant's case was pending, the parole detainer was still in place even after the prosecutor refiled the charges.

Accordingly, the jail credit statute, MCL 769.11b, does not apply in this case. Defendant remained in jail because of the parole detainer, not "because [he was] denied or unable to furnish bond for the offense of which he [was] convicted . . . ." *People v Idziak*, 484 Mich 549, 567; 773 NW2d 616 (2009), quoting MCL 769.11b. Therefore, the trial court correctly determined that defendant was not entitled to any jail credit in this case.

## C. 506 DAYS

Defendant alternatively argues that he was entitled to credit for all 506 days he spent in jail because our Supreme Court's decision in *Idziak* was wrongly decided. But "this Court does not have the authority to ignore Supreme Court precedent." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 293-294; 14 NW3d 472 (2023). Accordingly, we deny relief on this issue. See *id*.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace