**O'Neal SEBASTIAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 25, 1968.

Rehearing Denied Feb. 7, 1969.

Cecil C. Sanders, Lancaster, for appellant.

Robert Matthews, Atty. Gen., John Browning, David Murrell, Asst. Attys. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

O'Neal Sebastian was convicted of stealing a cow and was sentenced to five years' imprisonment. Appealing from the judgment of conviction, he argues that (1) the evidence was insufficient to sustain a conviction; (2) his motion for a continuance should have been granted; (3) improper evidence was admitted and proper evidence was rejected; (4) he was entitled to a new trial; and (5) the verdict was the result of passion and prejudice.

The cow belonged to one J. R. Amon and had been pastured in a field bordering on the Kentucky River. The cow disappeared and in a search for it Amon found four empty 12-gauge shotgun shells near the bank of the river, with blood on the ground and some blood and flesh on a tree trunk. The next day the cow's head, entrails and the body of an unborn calf were found on the bank of the river downstream. Subsequent investigation by police officers located a shotgun which upon appropriate tests proved to be the gun that had fired the four shells found in Amon's field.

The evidence pointing to Sebastian as the offender consisted of the admitted fact that two days after the disappearance of the cow Sebastian had delivered some fresh beef to a locker plant to be ground into hamburger, and the disputed testimony of two witnesses that several days before the cow disappeared the shotgun in question had been delivered to Sebastian by one Rutherford, to hold as security for a debt owed him by Rutherford, and the gun was not returned to Rutherford by Sebastian until several days after the cow disappeared.

As concerns the beef, Sebastian maintained that he had purchased it from a person unknown to him, who wore a beard and was driving a red truck. As concerns the shotgun, he denied ever having had it in his possession and he argues that the testimony of the two witnesses putting it in his possession is not worthy of belief because the two witnesses were convicted felons and their story was incredible. In substance, their story was that Sebastian took the shotgun as security for $35 which Rutherford was to pay Sebastian for another gun. Sebastian says the story is unbelievable because he is an expert on guns; the shotgun was worth only $4.00 and was dangerous to shoot, so he would not have considered it of any value as security; there was testimony that Rutherford paid him the $35 when he took the other gun so there was no debt to secure; and there was evidence that the day after Rutherford got the shotgun back from Sebastian he (Rutherford) pawned it, which would be an unreasonable thing for a man to do who had just paid $35 for another gun.

It is our opinion that the credibility of the testimony of the two witnesses was for the jury. We do not find their story to be so incredible as to be unworthy of belief. The shotgun was capable of being fired and plainly it had some value. As to the payment for it, the evidence would warrant the conclusion that Rutherford paid *some* of the $35 purchase price the day the sale was made, so Sebastian was holding the other gun as security only for the balance due.

The evidence that the shotgun was in Sebastian's possession during the period in which the cow disappeared, plus the evidence that Sebastian had fresh beef in his possession for which he did not have a satisfactory explanation, was in our opinion sufficient to sustain the conviction. Cf. Hoskins v. Commonwealth, Ky., 374 S.W.2d 839; Mason v. Commonwealth, Ky., 357 S.W.2d 667.

We consider now the question of continuance. The offense occurred on January 31, 1967. Sebastian was arrested and made bond on March 6, and he was indicted on March 13. Trial was set for March 30. On March 18 Sebastian appeared with counsel and moved for a continuance until the July term, on the ground that the additional time was necessary to enable him to locate the bearded man with the red truck from whom Sebastian said he had bought the beef. The court granted a continuance only until April 6, on which day the trial was held. On that day Sebastian did not renew his motion for a continuance or make any showing of what efforts he had been making since March 18 to find the bearded man. We conclude that under these circumstances the trial court did not abuse its discretion in not granting the continuance sought in the motion of March 18.

Sebastian's complaints concerning the admission and rejection of evidence are made by him without elaboration or support of authority and they merit only summary treatment, as follows:

1. The claimed "tampering" with some of the shotgun shells admitted in evidence consisted only of the shot ends having been clipped off, before firing, to reduce the danger of exploding the barrel of the gun; the clipping did not affect the integrity of the firing-pin marks on the heads, which were the significant evidence.

2. The refusal of the court to allow Sebastian to ask the deputy sheriff as to a conversation with Sebastian about the price paid by Rutherford for the gun he bought from Sebastian was not erroneous because the question was designed simply to get into evidence a self-serving statement of Sebastian's.

3. For impeachment purposes, Rutherford could be asked whether or not he had been convicted of a felony, but not the nature of the felony.

4. The trial court correctly refused to allow questioning of the witness Walker as to what he said in an alleged conversation with Sebastian's wife, with reference to whether he was afraid of Rutherford, since the question would have been proper only for impeachment purposes and no foundation had been laid by previously asking Walker whether he was afraid of Rutherford (the idea being that he was testifying falsely out of fear).

5. We cannot determine whether there was prejudicial error in the trial court's refusal to permit questioning of Mrs. Sebastian as to a conversation she had with the witness Walker concerning the gun transaction between Sebastian and Rutherford, because no avowal was made as to what Mrs. Sebastian's testimony would be.

We come next to the motion for a new trial. It was rested on alleged newly discovered evidence, consisting of a statement alleged to have been made by the witness Walker, to the newly discovered witness, *in the presence of Sebastian the day before the trial.* Obviously Sebastian must have known of this statement before the trial if it was made in his presence, so the evidence could in no way qualify as newly discovered.

Finally, we have the contention that the verdict imposing a five-year sentence is so severe, for the relatively minor offense of cow-stealing, as to indicate the influence of passion and prejudice. It is suggested that the testimony concerning the killing of the cow and its dismemberment aroused the passions of the jury. We are not persuaded that the testimony would be likely to have a prejudicial effect, and we are not convinced that the five-year sentence of itself indicates passion.

The judgment is affirmed.

All concur, except OSBORNE, J., not sitting.